**O**

# United States District Court
# Central District of California

| | |
|---|---|
| BROOK TROUT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEGGITT-USA SERVICES, INC.,<br><br>Defendant. | Case No. 2:16-cv-07520-ODW(AJW)<br><br>**ORDER GRANTING AMENDED MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE ACTION SETTLEMENT [47]** |

## I.  INTRODUCTION

Plaintiff Brook Trout ("Plaintiff") initiated this action against Defendant Meggitt-USA Services, Inc. ("Meggitt") for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), as a collective action, and under the California Labor Code, as a class action. (*See* Compl., ECF No. 1.) On February 28, 2017, the parties mediated the dispute and came to a Settlement Agreement for both the FLSA and California Labor Code claims. (Notice of Settlement, ECF No. 17.) Plaintiff filed his First Amended Complaint on March 29, 2017 (First Amended Complaint ("FAC"), ECF No. 24), and the parties thereafter executed the Joint Stipulation of Settlement ("Stip"), which defined the terms of the settlement. (Joint Stipulation of Settlement ("Stip"), ECF No. 31-3.) On July 12, 2017, Plaintiff filed a Motion for Preliminary Approval of Class Settlement. (Mot., ECF No. 31.) The Court denied Plaintiff's request for conditional certification of the class action, granted conditional

certification of the collective action, and denied preliminary approval of the collective action settlement. (Order, ECF No. 44.) In addition, the Court pointed to three deficiencies in the Prior Motion that had to be cured in order for the Court to preliminarily approve the collective action settlement. (Order 22.)

Plaintiff now amends the Prior Motion and requests the Court preliminarily approve the collective action settlement. (Am. Mot., ECF No. 47.) For the reasons discussed below, the Court **GRANTS** the Amended Motion for Preliminary Approval of Collective Action Settlement.[1]

## II. BACKGROUND

### A. Factual Background

Meggitt has employed Plaintiff as a "Level 2 IT Analyst" since April 28, 2014. (FAC ¶ 4.) Prior to September 2016, Meggitt classified Plaintiff as an exempt employee and paid him a fixed salary. (*Id.* ¶¶ 12, 16.) Because of this classification, he did not receive any rest breaks or overtime pay.[2] (*Id.* ¶¶ 17, 24–25.) In September 2016, Meggitt reclassified Plaintiff and twenty-one other Management Information Systems ("MIS") employees with "nearly identical" job duties as nonexempt employees. (*See id.* ¶¶ 12, 15; Deserio Decl. ¶ 2, ECF No. 42; Walsh Decl. ¶ 2, ECF No. 41-1.) Plaintiff then demanded that Meggitt pay him back wages for the overtime that he worked while he was misclassified. (FAC ¶ 18.) Meggitt agreed and paid him approximately $131,000.00. (*Id.*; Deserio Decl. ¶ 2.) Meggitt also paid back wages to the twenty-one other misclassified IT employees based on their estimates of the number of overtime hours that they worked before being reclassified. (FAC ¶¶ 19–21.) Plaintiff also alleges that an additional seven former Meggitt employees would have been reclassified in September 2016, had they not already left the company. (*Id.* ¶¶ 13, 15.) It does not appear that those former employees received back wages.

---

[1] After carefully considering the papers filed in support of the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] Plaintiff estimates that he worked 20 hours per week of overtime before his reclassification. (FAC ¶ 17.)

2

(*See generally* FAC.)

**B.     Pre-Settlement Procedural History**

Plaintiff originally filed this action in October 2016. (Compl.) In December 2016, the parties stipulated to stay the case pending the outcome of an early mediation. (ECF Nos. 15, 16.) On February 28, 2017, the parties participated in a full-day mediation that resulted in a settlement of all class claims and collective action claims. (*See* Notice of Settlement 2; Mot. 1.) On March 27, 2017, as part of the Settlement, Plaintiff filed a FAC, asserting claims for: (1) failure to pay overtime compensation in violation of California Labor Code sections 218, 6, 510, and 1194; (2) failure to furnish accurate wage statements in violation of California Labor Code section 226; (3) failure to pay overtime and liquidated damages in violation of the FLSA, 29 U.S.C. § 207; (4) failure to provide rest breaks in violation of California Labor Code section 226.7; and (5) violation of California Business and Professions Code section 17200. (FAC 1.)

Plaintiff asserts the FLSA claim as a collective action on behalf of himself and the 28 current and former IT analysts employed by Meggitt. (*Id.* ¶ 40.) Plaintiff asserts the remaining California claims as a class action on behalf of the current and former IT analysts that were employed by Meggitt in California. (*Id.* ¶ 30.) Although Plaintiff alleges that there are 14 class members in this latter group, Meggitt submitted evidence suggesting that there are actually only 10 class members. (*Id.* ¶ 35; Declaration of Pietro A. Deserio ("Deserio Decl."), ¶ 5, ECF No. 41-2.)

**C.     Proposed Settlement Terms**

The parties settled the class action and collective action claims separately. Meggitt agreed to pay the following amounts to settle both types of claims, including fees and costs to class counsel:

///

///

///

| Collective Action<br>Total Payment: $850,000[3] | | Class Action<br>Total Payment: $260,000 | |
| --- | --- | --- | --- |
| **Reduction** | **Amount** | **Reduction** | **Amount** |
| Attorneys' Fees | $277,200 (33%) | Attorneys' Fees | $85,800 (33%) |
| Attorneys' Costs | $7,500 | Attorneys' Costs | $2,500 |
| Incentive Award | $7,500 | Incentive Award | $2,500 |
| Administrative Fee | $7,500 | Administrative Fee | $2,500 |
| Taxes | Approx. 30% | Taxes | Approx. 30% |
| **Net Payment (before taxes)** | **$550,300** | **Net Payment (before taxes)** | **$166,700** |

(Declaration of Michael Tracy, ("Tracy Decl."), ECF No. 31-1; *see also* Deserio Decl. ¶ 2 n.2.)

The total settlement in the collective action, not including back wages already paid, is $850,000.00. (Tracy Decl., Ex. 2 at 1.) Each collective action member that has already received a back wage payment will receive a further payment equal to approximately 47% of the back wage payment. (Deserio Decl. ¶ 2.) Each collective action member that did *not* previously receive a back wage payment will receive an amount calculated using the following formula: [number of weeks worked] x [hourly wage x 1.5] x [estimated number of overtime hours worked per week x 2]. (*Id.*)[4] The default number of overtime hours worked per week is 5.3; however, if a class member believes that he or she worked a greater number of overtime hours per week, he or she may submit evidence to that effect. (Stip. ¶ 10.) If any such evidence is submitted, the parties will meet and confer to determine whether a settlement can be reached. (*Id*.) If no agreement can be reached, the parties will submit the matter to the Court for decision. In no case may the average weekly overtime hours exceed 20. (*Id*.)

---

[3] This amount is in addition to the $846,233 in back wages that Meggitt previously paid to current reclassified employees before Plaintiff filed this action.

[4] This essentially amounts to twice the unpaid overtime during this period.

The total amount of the class action settlement is $260,000.00. For each class member, he or she will receive a payment calculated as follows: [number of weeks worked between October 7, 2012, and April 1, 2017] ÷ [total number of weeks worked by *all* members of the class] x [166,700]. (Deserio Decl. ¶¶ 2–4.) If any class member opts out of the settlement, the weeks worked for that person will be eliminated from the calculation and that class member's settlement funds will revert to Meggitt. (Stip. ¶ 9.)

**D. Post-Settlement Procedural History**

On July 12, 2017, Plaintiff moved for conditional class certification and preliminary approval of the class settlement. (Mot., ECF No. 31.) On August 28, 2017, in response to an order from the Court, Plaintiff submitted a further declaration in support of his request for Attorneys' Fees, and Meggitt submitted a declaration estimating the total payout to each class member and a brief explaining why there was a "bona fide dispute" with respect to Plaintiff's FLSA claims. (ECF Nos. 41–43.)

On December 6, 2017 the Court denied Plaintiff's motion for Rule 23 Class Certification, granted Plaintiff's motion for FLSA Collective Action Conditional Certification, and denied Plaintiff's motion for preliminary approval of FLSA Collective Action Settlement. (Order 22.) In addition, the Court ordered the parties to file an amended motion for approval of collective action settlement, addressing three issues:

> (1) the Settlement's release of claims provision must be adjusted to reflect waiver regarding an opt-in Collective Action Member's FLSA rights only; (2) the portion of the FLSA Settlement that remains unclaimed cannot revert to Meggitt—the parties must remove the reversion entirely or name an appropriate *cy pres* recipient for unclaimed funds; and (3) the Settlement must reduce the Attorneys' Fees to reflect a maximum of 25% of the Gross Settlement Amount.

(*Id.*) Plaintiff now moves for preliminary approval of collective action settlement, as amended to address the three deficiencies in the Prior Motion. (Am. Mot.)

## III. LEGAL STANDARD

"The FLSA places strict limits on an employee's ability to waive claims for unpaid wages or overtime . . . for fear that employers may coerce employees into settlement and waiver." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 175 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). Accordingly, FLSA claims may only be settled with prejudice if approved of by the district court or the Department of Labor. *See Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dept. of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Meza v. 317 Amsterdam Corp.*, 14-CV-9007 (VSB), 2015 WL 9161791, at *1 (S.D.N.Y Dec. 14, 2015) ("Parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor.") (citation omitted).

In reviewing a FLSA settlement, a district court must determine whether the settlement represents a "fair resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355. A bona fide dispute exists when there are legitimate questions about "the existence and extent of Defendant's FLSA liability." *Ambrosino v. Home Depot U.S.A., Inc.*, No. 11-cv-1319 L (MDD), 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014). In order to demonstrate a bona fide dispute under the FLSA "[t]he employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages." *Mamani v. Licetti*, No. 13-CV-7002 (KMW) (JCF), 2014 WL 2971050, *2 (S.D.N.Y. July 2, 2014) (citation omitted). "If there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).

After a district court has determined that a bona fide dispute exists, it must then decide whether the settlement is fair and reasonable. *Selk*, 159 F. Supp. 3d at 1172. A district court acts as a "gatekeeper" to ensure that FLSA settlements do not undermine the Act's purposes and that employees' substantive labor rights are protected. *See id.* at 1172–73. To evaluate the reasonableness of the settlement, courts consider the following factors: "(1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Id.* "In considering these factors under a totality of the circumstances approach, a district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* If after considering these factors the court determines that the settlement is fair and reasonable, then "the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C. 10-5243 SBA, 2012 WL 6629608, *2 (N.D. Cal. Dec. 19, 2012) (internal quotations marks and citation omitted).

### III. DISCUSSION

#### A. Preliminary Approval of FLSA Collective Action Settlement

In its previous Order, the Court concluded there was a bona fide dispute between the parties regarding liability under the FLSA for three reasons: (1) Meggitt contends that several of the allegedly misclassified employees performed duties that would subject them to exemptions from overtime pay; (2) Meggitt argues that Plaintiff cannot establish that the FLSA violation was willful; and (3) Meggitt contends that the unpaid overtime should be calculated using the Fluctuating Workweek method and not the proposed method of straight one-and-one-half time calculation. (Order 10.)

After the Court has determined that a bona fide dispute exists, it must then decide whether the settlement is fair and reasonable. *Selk*, 159 F. Supp. 3d at 1172.

To evaluate the reasonableness of the settlement, courts have looked at six factors. *Id.* at 1172–73. In its previous order the Court weighed four of the factors in favor of approving the Settlement Agreement, but took issue with the fourth and sixth factors—the scope of any release provision in the Settlement Agreement and the possibility of fraud or collusion. (Order 15.) With respect to the fourth factor, the Court ruled that the scope of the release of claims was overbroad. (*Id.* at 17–18.) Under the sixth factor, the Court ruled that counsel received a disproportionate distribution of the settlement and took issue with the parties' arrangement for unclaimed funds to revert to Meggitt. (*Id.* at 19–22.) The Plaintiff has now amended his Motion to address the three deficiencies in the Settlement Agreement. (*See* Am. Mot.) The Court will address each issue in turn.

**1. Release of Claims**

In its previous Order, the Court concluded that the release of claims provision was overbroad. (Order 17.) "Under the proposed Settlement Agreement, if a member of the collective action opts in and obtains a recovery, then they waive *all* claims in the First Amended Complaint and any claims that *could have* been asserted in the First Amended Complaint." (*Id.*) Agreeing to these terms would bar a member of the collective action from pursing state law claims, for which there is a possibility of large recovery. (*Id.* at 17–18.) As a result, the Court held that it was unreasonable for collective action members to agree to such a broad release of claims and ordered this provision to be adjusted to reflect waiver regarding an opt-in collective action member's FLSA rights only. (Id. at 18, 22.)

Courts review the scope of any release provision in an FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights that are unrelated to the litigation. *Selk*, 159 F. Supp. 3d at 1178. Courts are "skeptical of release provisions that require employees to forfeit claims designed to advance public values through private litigation" because settlement "deprives courts of their duty to explicate and give force to the values embodied in authoritative texts

such as the Constitution and statutes." *Id.* at 1177 (quoting Owen M. Fiss, *Against Settlement*, 93 Yale L.J. 1073, 1085 (1984)). In FLSA settlement actions, an overbroad release of claims "confers an uncompensated, unevaluated, and unfair benefit on the employer;" and when an employee executes a broad release, he "effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010). Thus, when an FLSA settlement provides that opt-in members will receive unpaid wages and related damages, but nothing more, a release provision should be limited to the wage and hour claims at issue. *Selk*, 159 F. Supp. 3d at 1178.

In response to the Court's prior Order, the parties have agreed to amend Paragraph 31 of the Settlement Agreement to read: "All individuals who opt-in to the FLSA settlement release only claims under the FLSA asserted in the [First] Amended Complaint."[5] (Am. Mot. 2; *see also* Stip. 18.) This amended provision limits the previously overbroad release of claims by specifying that an opt-in collecting action member is waiving FLSA rights only. Therefore, this amended provision satisfies the Court's first requirement for preliminary approval of the Settlement Agreement.

**2. Disproportionate Distribution of the Settlement to Counsel**

In evaluating the sixth factor—the possibility of fraud or collusion—the Court previously took issue with the first "sign" of collusion: "when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply awarded." (Order 20); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The Court did not find adequate explanation of any circumstance that justified allowing Attorneys' Fees to exceed 25% of the Gross Settlement Amount. (Order 20–21.) Because counsel for Plaintiff sought Attorneys' Fees "up to $363,000.00 (33% of the Gross Settlement

---

[5] The Court takes note that Meggitt was referring to the First Amended Complaint in the amended provision, as there is currently no "Second Amended Complaint filed with the Court.

Amount less the Back Wage Credit)"[6] the Court held this factor weighed against approval of the Settlement Agreement and ordered that the Attorneys' Fees to be reduced to reflect a maximum of 25% of the Gross Settlement Amount. (Mot., Ex. 1; Order 20–22.)

While attorneys' fees may be awarded in a certified collective action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award is reasonable, even if the parties have already agreed to an amount. *See Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003); *Knisley v. Network Assoc.*, 312 F.3d 1123, 1125 (9th Cir. 2002); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 n.20 (9th Cir. 1999). Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). "Because the benefit to the class is easily quantified in common-fund settlement, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942. In this Circuit, courts typically calculate 25% of the class fund as the benchmark for a reasonable fee award, "providing adequate explanation in the record of any special circumstances justifying a departure." *Ruch v. AM Retail Grp., Inc.*, No. 14-cv-05352-MEJ, 2016 WL 1161453, at *12 (N.D. Cal. March 24, 2016) (internal quotation marks and citations omitted); *Bluetooth*, 654 F.3d at 942.

In Plaintiff's Amended Motion, Plaintiff declares that the parties have agreed to amend Paragraph 16 of the Settlement Agreement to read; "The 'FLSA Attorney's Fees approved for the FLSA Settlement are not to exceed $212,500.00." (Am. Motion. 2; *See also* Stip. 5.) The total settlement amount for the FLSA settlement is

---

[6] The Settlement Term Sheet states the attorneys' fees amount shall be reduced by at least $85,800.00 in the event the Rule 23 Class is not certified. (ECF No. 31-2.)

$850,000.00. (*See* Mot., Ex. 1 at 1.) Thus, the parties' amended provision reduces the Attorneys' Fees to a maximum of 25% of the total FLSA settlement amount. Therefore, this amended provision satisfies the second deficiency in the Settlement Agreement.

**3. Reversion of Unclaimed Settlement Funds**

The Court previously took issue with the portion of the settlement fund that is reversionary. (Order 21; *See* Stip. 9.) The Court noted that settlement agreements with reversionary provisions for unclaimed funds are strongly disfavored and if such provisions are to remain in the settlement agreement "the parties should explain why those funds should revert." (Order 21.) Because the parties made no attempt to explain why the unclaimed funds for Potential Collective Action Members should revert back to Meggitt, the Court ordered the parties to "remove the reversion entirely or name an appropriate *cy pres* recipient for unclaimed funds." (Order 21–22.) However, the parties have now provided adequate explanation as to why reversion is appropriate, and the Court now approves of the reversion provision.

Settlement agreements with reversions to a defendant for unclaimed funds are strongly disfavored. *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 612 (E.D. Cal. 2015). If unclaimed funds revert to a defendant, the parties should explain why those funds should revert. *Id.* (citing *Dudum v. Carter's Retail, Inc.*, No. 14-cv-00988-HSG, 2015 WL 5185933, at *3 (N.D. Cal. Sept. 4, 2015); *Flores v. Alameda Cnty. Indus. Inc.*, No. 14-cv-03011-JD, 2015 WL 3763605, at *3 (N.D. Cal. June 16, 2015)).

In response to the Court's prior Order, Plaintiff further argues why the unclaimed funds should revert to Meggitt. (Am. Mot. 2–3.) Plaintiff alleges that because the Settlement Agreement pays each employee for the full amount of overtime worked plus an equal amount in liquidated damages, the Settlement Agreement adequately compensates each collective action member. (Am. Mot. 3.) If some of the collective action members do not submit claim forms, a non-reversionary

settlement would distribute additional money to other employees who did submit the claim forms, resulting in some employees disproportionately receiving more than 100% of the value of their claims. (*Id*.) In addition, Plaintiff argues that Meggitt would remain liable to all employees that did not opt-in to the settlement, as they will not waive any FLSA-related claims and would remain free to individually pursue those claims. (*Id*.) With these considerations, the parties have adequately explained why the unclaimed funds for Potential Collective Action Members should revert back to Meggitt. "Indeed, claims-made settlements, with a revision of unclaimed funds to the employer are routinely approved by the Ninth Circuit and Courts in California." *Nur v. Tatitlek Support Servs., Inc.*, No. 15-CV-00094 SVW (JPRx), 2016 WL 3039573, at *3 (C.D. Cal. April 25, 2016) (citations omitted). Therefore, the Court finds the portion of the Settlement Agreement providing for reversion of unclaimed funds to the employer to be fair, reasonable, and adequate under the circumstances.

Thus, with the above-mentioned modifications to Paragraphs 31 and 16 of the Settlement Agreement, the Court **GRANTS** preliminary approval of the Collective Action Settlement.

## B. Attorneys' Fees and Class Representative Award

### 1. Attorneys' Fees

As discussed above, the Court concludes that the Attorneys' Fees awarded to counsel for the collective action are reasonable. In the Amended Motion, the proposed Attorneys' Fees are limited to 25% of the total settlement payout. Because the Attorneys' Fees equal the 'benchmark' for a reasonable fee award, the Court **GRANTS** Plaintiff's requested Attorneys' Fees.

### 2. Incentive Award

"At its discretion, a district court may award an incentive payment to the named plaintiffs in a FLSA action to compensate them for work done on behalf of the class." *Selk*, 159 F. Supp. 3d at 1181 (citation omitted). In reviewing whether an incentive award is appropriate, the district court should consider the actions the plaintiff has

taken to protect the interests of the class, the degree to which the class benefitted from such actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *See id.* Courts will scrutinize large incentive payments "to ensure that the prospect of a large incentive did not encourage a named plaintiff 'to accept a suboptimal settlement at the expense of the class members whose interests they are appointed to guard.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)).

Plaintiff seeks $7,500.00 class representative enhancement for the FLSA Settlement. (Mot. 15.) Plaintiff contends that this amount is fair because "the average class member receives far more than this amount" and it is not disproportionate to the other class member's claims. (*Id.*) The net total available for the FLSA Settlement is $850,000.00, to be split amongst 29 individuals representing an average of $29,310.34 per person (prior to subtracting any fees). (*See* Term Sheet 1, ECF No. 31-2.) Therefore, the Court finds the class representative enhancement is not disproportionate to the other class member's claims and holds that the incentive award is reasonable and appropriate.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Amended Motion for Preliminary Approval of Collective Action Settlement. (ECF No. 47.)

**IT IS SO ORDERED.**

April 17, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**